UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY AMATO,

    Plaintiff,

v.

                                      Case No. 20-cv-12007
                                      Hon. Matthew F. Leitman

MAGGIANO'S HOLDING
CORPORATION,

    Defendant.

_____/

**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16) AND (2) TERMINATING DEFENDANT'S MOTION IN LIMINE (ECF No. 22) AS MOOT**

In this premises liability action, Plaintiff Mary Amato says that she injured her hip after she fell in a pitch-black parking lot of a restaurant owned and operated by Defendant Maggiano's Holding Corporation. (*See* Compl., ECF No. 1.) Maggiano's has now moved for summary judgment. (*See* Mot., ECF No. 16.) It argues that (1) Amato's claim is barred by judicial estoppel because she failed to disclose the claim in her bankruptcy proceedings, and (2) even if Amato could pursue her claim, it would fail because the hazard she confronted (the lack of lighting in the parking lot) was "open and obvious" under Michigan law. (*Id.*) The Court

1

agrees on both scores.  Accordingly, for the reasons explained below, Maggiano's motion for summary judgment is **GRANTED**.[1]

# I

Amato is a resident of Warren, Michigan. (*See* Amato Dep. at 6, ECF No. 16-3, PageID.190.)  In September 2014, Amato filed for personal bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan. (*See* Bankruptcy Pet., ECF No. 16-6.)

In August 2017, while Amato's bankruptcy remained pending, Amato had dinner at a Maggiano's restaurant in Troy, Michigan. (*See* Amato Dep. at 49, ECF No. 16-3, PageID.201.)  At approximately 9:30 p.m., Amato walked out of the restaurant and into the parking lot so that she could return to her car. (*See id.* at 33, PageID.197.)  Amato says that when she entered the parking lot, she could not see where she was going "[b]ecause it was very dark, it was completely overcast, [and] there was no light." (*Id.* at 39, 44, PageID.198-199.)  Amato then "started to sway back and forth from imbalance and [] got very, very dizzy because there was no lighting" and because she "couldn't see anything" due it being "pitch dark out" in

---

[1] Maggiano's has also filed a motion in limine "to exclude evidence of Amato's economic damages because they were not computed in her initial disclosures or otherwise disclosed during discovery." (Mot. in Limine, ECF No. 22, PageID.332.)  Because, for the reasons explained in text above, the Court is granting Maggiano's motion for summary judgment, it need not decide Maggiano's motion in limine.  It therefore **TERMINATES** that motion without prejudice as moot.

the parking lot. (*Id.* at 47, 50, PageID.200-201.) Shortly thereafter, Amato fell to the ground. (*See id.* at 48, PageID.201.) Amato insists that she "didn't trip on anything." (*Id.* at 50, PageID.201.) She says that she merely "stepped on" a curb in the dark parking lot and fell. (*Id.*) As a result of her fall, Amato suffered a serious hip injury that ultimately required surgery. (*See id.* at 54, 61, PageID.202, 204.) Amato did not inform the Bankruptcy Court or the bankruptcy trustee about her fall or that the fall caused her any injuries at that time. (*See id.* at 16, PageID.192.)

In January 2020, while Amato was still in bankruptcy, she consulted with an attorney about potential claims arising out her fall. (*See* Amato Resp. Br., ECF No. 19, PageID.286.) Amato still did not inform the Bankruptcy Court or the bankruptcy trustee about her fall or her potential civil claim(s) at that time.

In February 2020, Amato filed a proposed modification to her bankrupcy plan in order to excuse $2,035.00 in plan payments. (*See* Proposed Plan Modification, ECF No. 16-9, PageID.260.) Amato explained to the Bankruptcy Court that she needed the modification because she was "off work between April 2019 and December 2019 for hip surgery and rehab and her loss of income resulted in her inability to make plan payments." (*Id.*) Amato never told the Bankruptcy Court why she needed hip surgery, or that the surgery was caused by her fall at Maggiano's. Nor did Amato list a potential claim against Maggiano's in a list of assets that she included with her proposed plan modification. (*See id.*, PageID.263.) Based on

3

Amato's representations, the Bankruptcy Court adopted her proposed plan modification on March 11, 2020. *See In re: Amato*, Bankr. Ct. Case No. 14-54956, at Dkt. No. 71.

On April 16, 2020, while her bankruptcy proceedings were still pending before the Bankruptcy Court, Amato "retain[ed] an attorney to pursue her [personal-injury] claim [against Maggiano's] in this case." (Amato Resp. Br., ECF No. 19, PageID.286. *See also* Retainer Agmt., ECF No. 19-2.)  Again, Amato did not inform either the Bankruptcy Court or the bankruptcy trustee that she had begun to pursue a civil claim against Maggiano's at that time.

The Bankruptcy Court discharged Amato from bankruptcy on June 16, 2020. (*See* Bankruptcy Discharge, ECF No. 16-11.)  By the time of that discharge, Amato had never informed the Bankruptcy Court or the bankruptcy trustee about her fall or her civil claim against Maggiano's.  Three weeks later, Amato filed this action. (*See* Compl., ECF No. 1-2.)

## II

Amato filed her action against Maggiano's in the Oakland County Circuit Court on July 8, 2020. (*See id.*)  In the Complaint, Amato alleges that she fell and suffered injuries "[d]ue to [Maggiano's] failure to ensure proper lighting in [its parking lot]." (*Id.* at ¶8, PageID.10.)

4

Maggiano's removed Amato's action to this Court on July 28, 2020. (*See* Notice of Removal, ECF No. 1.) It has now filed a motion for summary judgment. (*See* Mot., ECF No. 16.) It argues that (1) Amato's claim is barred by the doctrine of judicial estoppel, and (2) the hazard Amato alleges caused her fall (*i.e.*, the lack of lighting in its parking lot) was "open and obvious" under Michigan law. (*See id.*) The Court has determined that it can resolve the motion without oral argument. (*See* Notice, ECF No. 27.)

### III

Maggiano's moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. A movant is entitled to summary judgment under that rule when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52.

5

## IV

Maggiano's first argues that Amato's claim is barred by the doctrine of judicial estoppel because Amato failed to disclose her claim against Maggiano's as an asset in her bankruptcy proceedings. (*See* Mot., ECF No. 16, PageID.166-174.) The Court agrees.

### A

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "This doctrine is 'utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id.* (quoting *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir. 2002).

"In the bankruptcy context […] judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Id.* (quoting *Browning*, 283 F.3d at 775-76.) However, "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Id.* "In determining whether [a party's] conduct resulted from mistake or inadvertence, [a] court

6

considers whether: (1) [the party] lacked knowledge of the factual basis of the undisclosed claims; (2) [the party] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [courts] will look, in particular, at [the party's] 'attempts' to advise the bankruptcy court of her omitted claim." *Id.* at 478. Where a defendant comes forward with evidence to satisfy this element of the *White* test, a plaintiff must "point out evidence that shows an absence of bad faith (in particular, through her attempts to correct her initial omission) and that her omission resulted from inadvertence or mistake and was not intentional." *Id.*, n.4.

**B**

Amato's premises liability claim here is plainly barred under the standard set forth in *White*. First, Amato has asserted a position in this case – that she has a claim against Maggiano's – that "is contrary to" the position that she took in her bankruptcy proceedings (in which she failed to disclose the claim despite being required to do so). Indeed, in *White*, the Sixth Circuit held that "omit[t]ing" a civil claim from disclosures submitted to a bankruptcy court was "contrary to" the debtor's "later assertion of the [] claim before the district court." *White*, 617 F.3d at 479. Thus, the first *White* factor is satisfied.

Second, the Bankruptcy Court adopted Amato's contrary position that she did not have a claim against Maggiano's. As explained above, the Bankruptcy Court

approved Amato's motion to modify her bankruptcy plan and discharged her from bankruptcy based, in part, a list of assets from Amato that did not include her potential claim against Maggiano's. That amounts to an adoption of her position that she did not have a claim against Maggiano's. *See White*, 617 F.3d at 479. *See also Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005) (explaining that "in confirming [a party's] Chapter 13 plan, the bankruptcy court adopted [the party's] statement that she had no potential causes of action"). The second factor of the *White* test is therefore satisfied.

Finally, Amato's failure to inform the Bankruptcy Court and/or the bankruptcy trustee of her claim against Andiamo's did not result from mistake or inadvertence. Amato clearly did not "lack[] knowledge of the factual basis of [her] undisclosed claim[]." *White*, 617 F.3d at 418. She slipped and fell at Maggiano's three years before her bankruptcy was discharged, and she consulted with, and then hired, an attorney to pursue civil claims against Maggiano's while her bankruptcy was still pending. Amato also had a motive for concealment. Indeed, as the Sixth Circuit has recognized, "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 425. *See also White*, 617 F.3d at 418 (explaining that a debtor "had a motive for concealment" because "if [a] claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying [the debtor's] creditors, rather than simply to paying [the debtor]"). Lastly,

Amato has not presented any evidence of an absence of bad faith. As noted above, Amato made no effort, at any time, to inform the Bankruptcy Court and/or the bankruptcy trustee that she was injured at Maggiano's, that she had a potential claim against Maggiano's, or that, before her bankruptcy was discharged, she had hired an attorney to pursue that claim. And she filed the claim in this Court a mere three weeks after she exited bankruptcy. Moreover, Amato has not submitted an affidavit or any other evidence that offers any explanation as to how she proceeded in good faith. Under these circumstances, the Court cannot say there is an absence of bad faith.

For all of these reasons, Amato's premises liability claim is barred by judicial estoppel. Maggiano's is therefore entitled to summary judgment.

## C

Amato counters that judicial estoppel does not apply for several reasons. None of her arguments persuade the Court that she may pursue her premises liability claim under the facts that exist here.

Amato first argues that she could not have listed her claim against Maggiano's in her bankruptcy because she "had not even yet fallen at the time of her bankruptcy filing." (Amato Resp., ECF No. 19, PageID.288.) But this is no answer because "[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action," even those that arise while a

9

bankruptcy is pending. *White*, 617 F.3d at 479 n.5 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). *See also* 11 U.S.C. § 1306(a)(1) ("Property of [a bankruptcy] estate includes […] all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed").

Next, Amato says that her failure to disclose her claim was inadvertent because "[s]he was not even aware of which chapter of bankruptcy code she had utilized in her filing even after discharge." (Amato Resp., ECF No. 19, PageID.288.) Amato therefore seems to argue that she was unaware that she had an obligation to disclose her claim against Maggiano's. But Amato was represented by counsel in her bankruptcy proceedings, and "[i]t is well-settled that a cause of action is an asset that must be" disclosed a party's bankruptcy proceeding. *Lewis*, 141 F. App'x at 424. Moreover, Amato's claimed "ignorance" of that well-settled rule "is no excuse" for her failure to disclose her claim to the Bankruptcy Court and/or the bankruptcy trustee. *Riddle v. Chase Home Finance*, 2010 WL 3504020, at ** 5-6 (E.D. Mich. Sept. 2, 2010) (holding that failure to disclose civil cause of action was not "inadvertent" and was barred by judicial estoppel). In addition, Amato has not presented any affirmative evidence to support her "ignorance of the law" excuse. As noted above, she has not submitted an affidavit to the Court explaining that her or her counsel were unaware of the "well-settled" rules of bankruptcy law. Nor has she

10

submitted any evidence that she attempted to inform the Bankruptcy Court or the bankruptcy trustee about her claim but was prevented from doing so in some way. She therefore has not provided the Court any basis on which it could conclude that her failure to disclose the claim was inadvertent.

Amato next contends that "even if" she cannot pursue her claim against Maggiano's, her "claim out to be preserved and the [bankruptee] trustee [should] be substituted in [her] place to pursue the claim." (Amato Resp., ECF No. 19, PageID.288.) But Amato has not presented any evidence that she has ever spoken to the bankruptee trustee about this claim, that the trustee has any interest in re-opening the bankruptcy and/or appearing in this case, or that the trustee believes pursuing this claim would be in the best interest of Amato's creditors. Nor has she presented any evidence that she has taken any action to re-open her bankruptcy proceedings. Under these circumstances, Amato has not presented the Court any basis to substitute the bankruptcy trustee in her place. *See Thompson v. Bruister and Assoc., Inc.*, 2013 WL 4507734, at *3 (M.D. Tenn. Aug. 23, 2013) (granting summary judgment on the basis of judicial estoppel and rejecting argument that court should allow claim to proceed with bankruptcy trustee as the named plaintiff where plaintiffs had not submitted "any evidence about what the trustees' actual intentions [were] regarding this case and [p]laintiffs' claims"). Moreover, "[a]llowing [a] plaintiff to back-up, re-open the bankruptcy case, and amend [her] bankruptcy

11

filings, only after [her] omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if [she] is caught concealing them." *White*, 617 F.3d at 481 (internal citation and punctuation omitted).

Amato further asserts that she did make an effort to inform the Bankruptcy Court of her claim against Maggiano's. (*See* Amato Resp. Br., ECF No. 19, PageID.288.) Amato says that she "took action, including notifying the [B]ankruptcy [C]ourt that she had undergone surgery related to the claim, which suggested she was not trying to conceal the claim." (*Id.*) But Amato did *not* inform the Bankruptcy Court that she had undergone surgery "*related to the claim*." She merely informed the Bankruptcy Court that she had undergone surgery. (*See* Proposed Plan Modification, ECF No. 16-9, PageID.260.) She never told the Bankruptcy Court why she had that surgery or that she fell at Maggiano's. Simply put, Amato's incomplete disclosure about her surgery to the Bankruptcy Court does not persuade the Court that she made any real effort to put the Bankruptcy Court on notice of her claim against Maggiano's.

Finally, Amato says that the Sixth Circuit's decision in *Stephenson v. Malloy*, 700 F.3d 265 (6th Cir. 2012) is "fatal to [Maggiano's] position" that her claim is barred by judicial estoppel. (Amato Resp., ECF No. 19, PageID.287-288.) But the facts of *Stephenson* are significantly different than the facts that exist here. In *Stephenson*, a man named Senan Al–Mansoob filed a civil action in July 2009. *See*

12

*Stephenson*, 700 F.3d at 266. Two months later, Al–Mansoob filed for bankruptcy. *See id.* at 267. When he did so, he "did not list his claims against [the defendants] among his assets." *Id.* The defendants later moved to dismiss Al–Mansoob's claims based on judicial estoppel. *See id.* On appeal, the Sixth Circuit held that judicial estoppel did not bar Al–Mansoob's claims. *See id.* However, that court rested its holding primarily on the fact that Al–Mansoob had presented substantial evidence that he had not acted in bad faith. *See id.* at 273-274. The Sixth Circuit highlighted, among other things, that Al–Mansoob's counsel had "communicated freely about [the civil cause of action] with the [bankruptcy] trustee from nearly the inception of the bankruptcy proceeding, repeatedly seeking the trustee's guidance as to how the litigation should be handled." *Id.* at 275. In addition, Al–Mansoob submitted several affidavits and "documents corroborating the affidavits" to the district court "aver[ing] that the trustee had been aware of th[e] lawsuit since early in the bankruptcy proceedings." *Id.* at 269. Here, as described in detail above, Amato has presented no evidence that she ever told the bankruptcy trustee (or the Bankruptcy Court) about her fall at Maggiano's, about her potential civil claim against Maggiano's, or that she had hired a lawyer to pursue that claim. Indeed, she admits she never did so. (*See* Amato Dep. at 16, ECF No. 16-3, PageID.192.) Thus, *Stephenson* is distinguishable on its facts.

13

For all of these reasons, Amato's premises liability claim is barred by judicial estoppel. The Court will therefore grant Maggiano's motion for summary judgment.

V

In the alternative, Maggiano's argues that even if Amato's claim was not barred by judicial estoppel, her claim would still fail because the alleged hazard she confronted was "open and obvious" under Michigan law. (Mot., ECF No. 21, PageID.174-178.) The Court again agrees.

"The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 93-94 (Mich. 2012). Landowners, like Maggiano's here, "owe[] a duty" to invitees like Amato "to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on [their] land." *Id.* at 94. However, "an integral component of the duty owed" is "whether a [danger] is open and obvious." *Id.* (internal quotation omitted). A landowner "owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid. Whether a danger is open and obvious depends on whether it is

14

reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard,* calling for an examination of the objective nature of the condition of the premises at issue." *Id.* at 94-95 (internal citation omitted; emphasis in original).

Here, the hazard that Amato confronted – a lack of lighting in Maggiano's parking lot – was open and obvious. Amato testified that the parking lot was "pitch black" and that there was "no lighting." (Amato Dep. at 53, 55, ECF No. 16-3, PageID.202.) And she confirmed that she "registered" and "made a mental note" that she "couldn't see anything" and that she needed to be "careful" because of the lack of light. (*Id.* at 44, 53, PageID.199, 202.) Moreover, Amato has not identified anything "unusual about the inadequate lighting" that would have made it unreasonable for an average person with ordinary intelligence "from realizing that the [parking lot] was inadequately lighted." *Singerman v. Municipal Service Bureau, Inc.*, 565 N.W.2d 383, 387-88 (Mich. 1997) (holding that "inadequate lighting" at a hockey rink was an "open and obvious" danger). "Nor was there any chance that [a person] would forget the potentially hazardous condition, because the [unlight parking lot] was constantly before him." *Id.* Accordingly, because the danger here was open and obvious, Amato's premises liability claim fails under Michigan law.

In her response to Maggiano's summary judgment motion, Amato attempts to avoid this conclusion by recasting her premises liability claim. In that response,

15

Amato insists that "the actual danger was not the darkness but the change in curb height beneath [her] feet." (Amato Resp., ECF No. 19, PageID.290.) But Amato's new assertion that the hazard was a change in sidewalk height is belied by both the allegations in her Complaint and her deposition testimony. In her Complaint, Amato alleges that she fell "due to her inability to see," and because "[d]ue to [Maggiano's] failure to ensure proper lighting" in its parking lot, not because of anything having to do with the height of the curb. (Compl. at ¶¶ 8-9, ECF No. 1-2, PageID.10.) And at her deposition, Amato confirmed that she did not trip, and that she fell after beginning to feel "very, very dizzy *because there was no lighting*." (Amato Dep. at 47, ECF No. 16-3, PageID.200; emphasis added). Amato therefore cannot save her claim by recasting it as caused by a change in curb height.[2]

Finally, Amato says that the danger here was not "open and obvious" under the Michigan Court of Appeals' decision in *Liquia v. Antler Bar Amusements, LLC*, 2020 WL 4381870 (Mich. Ct. App. July 30, 2020). But *Liquia* is distinguishable. In *Liquia*, the plaintiff suffered injuries when "she tripped over a post sticking out of the ground while staying at the Double JJ Resort in Rothbury, Michigan." *Id.* at

---

[2] In Amato's Complaint, she alleges that she "fell to the ground after losing her footing due to her inability to see *and/or for other reasons which may be discussed during discovery*." (Compl. at ¶9, ECF No. 1-2, PageID.10; emphasis added.) But as described above, during discovery, Amato confirmed that she did not trip and that she fell because of the lack of light in the parking lot, not a change in the height of the curb. (*See* Amato Dep. at 47, 50, ECF No. 16-3, PageID.200; emphasis added).

*1.  At the time the plaintiff tripped over the post, "'it was very dark' and "really hard to see.'" *Id.*  On appeal, the Michigan Court of Appeals held that the danger the plaintiff confronted was not open and obvious.  It explained that "there was evidence that the danger and risk of tripping over a darkly colored post obscured by nighttime darkness and that was well below eye level but higher than what a reasonable person would ordinarily expect to step over, 'as presented' under these circumstances, would not have been discoverable by an average user with ordinary intelligence in plaintiff's position upon a casual inspection." *Id.* at *3.  But, importantly, as the Michigan Court of Appeals noted, the alleged hazard in *Liquia* was not the lack of light, but the "darkly covered post." *Id.*  And for all of the reasons explained above, the hazard that Amato says existed here and that caused her fall was the "pitch black" parking lot that had "no lighting." (Amato Dep. at 53, 55, ECF No. 16-3, PageID.202.)  Thus, *Liquia* cannot save Amato's premises liability claim.

## VI

For all of the reasons explained above, **IT IS HEREBY ORDERED** that:

- Maggiano's motion for summary judgment (ECF 16) is **GRANTED**; and
- Maggiano's motion in limine (ECF No. 22) is **TERMINATED WITHOUT PREJUDICE** as moot.

**IT IS SO ORDERED.**

Dated: February 3, 2022

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 3, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan  
Case Manager  
(313) 234-5126